■ In the Matter of the Claim of Louis LOMBARDI, Appellant, v BROOKLYN UNION GAS COMPANY et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [761 NYS2d 374] —Lahtinen, J. Appeals (1) from a decision of the Workers' Compensation Board, filed May 4, 2001, which ruled that claimant voluntarily withdrew from the labor market and denied his claim for workers' compensation benefits, and (2)

from a decision of said Board, filed June 24, 2002, which denied claimant's application for full Board review and/or reconsideration.

On January 18, 1994, claimant slipped and fell during the course of his duties as an inspector for Brooklyn Union Gas Company (hereinafter the employer), reportedly sustaining injuries to his right knee, shoulder and back. Although he did not miss work because of the injuries, he was assigned to light duty until July 1994 and, at that time, resumed his normal duty. In October 1994, claimant was notified of an early retirement incentive program being offered by the employer. On November 30, 1994, claimant, then 55 years of age, retired electing to take advantage of the incentive, which added five years to his 33 years of total employment, five years to his age and a $500 monthly social security supplement payable until he reached age 62. The employer thereafter raised the issue of claimant's voluntary withdrawal from the labor market. Although such argument was rejected by a Workers' Compensation Law Judge, the Workers' Compensation Board reversed and found that claimant voluntarily withdrew from the labor market. Claimant appeals.

Claimant initially argues that the Board's determination is not supported by substantial evidence. Generally, a claimant who voluntarily withdraws from the labor market by retiring is not entitled to workers' compensation benefits unless the claimant's disability caused or contributed to the retirement (see Matter of Gotthardt v Aide, Inc., Design Studios, 291 AD2d 587, 588 [2002], lv denied 98 NY2d 605 [2002]). The issue of whether a voluntary withdrawal has occurred is a factual one for the Board, which must be upheld if supported by substantial evidence (see Matter of Curtis v Dale Pipery Corp., 295 AD2d 836, 837 [2002]; Matter of Elwood v K-Mart Corp., 289 AD2d 794, 794 [2001]). Here, there was evidence that claimant did not miss work as a result of the accident and, after about six months of light duty, he returned to his normal tasks. Claimant continued at work until he elected to retire under a very favorable retirement incentive. Claimant did not apply for disability-related retirement. The medical evidence was not conclusive and, interestingly, the doctor called by claimant to testify did not treat him until several years after the incident and after his retirement. Moreover, testimony of that doctor revealed that claimant had not informed him about a prior injury to his knee. Based upon our review of the record, we are not persuaded by claimant's argument that the Board's determination was not supported by substantial evidence.

We find no merit in claimant's further argument that the Board's determination is inconsistent with this Court's holding in *Matter of Evans v Jewish Home & Hosp.* (289 AD2d 795 [2001]). In that case we held that "[a]lthough the absence of evidence of medical advice to retire may be a relevant factor in determining whether a particular claimant's retirement constituted a voluntary withdrawal from the labor market, medical advice to retire is not * * * an essential element for a finding that a claimant's compensable injury played a role in the decision to retire" (*id.* at 796 [citations omitted]). Indeed, in *Evans*, the Board, which we reversed, had ruled that "[a]bsent evidence that the claimant was medically advised to retire due to his compensation injuries, the Board Panel is *forced to conclude* that the claimant voluntarily removed himself from the labor market" (*id.* at 795 [emphasis added]). While in the current claim the Board noted claimant's failure to provide certain medical evidence, it is apparent that such fact was not the exclusive factor, but merely one of many factors the Board weighed in reaching its ultimate factual determination that claimant voluntarily withdrew from the labor market (*see Matter of Petermann v Consolidated Edison*, 294 AD2d 723 [2002]).

Claimant next contends that the Board violated Workers' Compensation Law § 30 by considering his receipt of pension benefits in its voluntary withdrawal analysis. The purpose of section 30 is to ensure that the decision as to the amount of compensation or benefits is not influenced by certain other monetary funds that may be available to a claimant (*see generally Matter of Svec v City of New York*, 251 App Div 758 [1937]; Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 30, at 572). The Board did not attempt to reduce claimant's benefits because he was receiving a retirement pension. Instead, the Board was addressing the threshold issue of whether an award of benefits was improper because claimant had voluntarily withdrawn from the labor market. A claimant's election to receive a retirement pension is a relevant factor for the Board to consider in making that factual determination (*see Matter of Coneys v New York City Dept. of Mental Health*, 299 AD2d 602, 602 [2002]; *Matter of Gotthardt v Aide, Inc., Design Studios, supra* at 588; *Matter of Amicola v New York Tel. Co.*, 294 AD2d 621, 621-622 [2002], *lv denied* 98 NY2d 764 [2002]).

The remaining arguments have been considered and found unpersuasive. Finally, claimant's appeal from the Board's decision denying claimant's request for reconsideration or full Board review is deemed abandoned as he has failed to raise

any issues with respect thereto in his brief (*see Matter of Drakes v Bank Julius Baer & Co.*, 301 AD2d 799, 800 n [2003]).

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the decisions are affirmed, without costs.